

**SIGNED this 27th day of September, 2021**

*Shelley D. Rucker*
Shelley D. Rucker
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

In re:

**The Strauss Company, Inc.,**

      **Debtor.**

_____

**The Strauss Company, Inc.,**

      **Plaintiff,**

**v.**

**Jarrett Builders, Inc.,**

      **Defendant.**

**No. 1:18-bk-12972-SDR**

**Chapter 11**

**Adv. No. 1:20-ap-01033-SDR**

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff The Strauss Company, Inc. ("Strauss")—a contractor and also the debtor in Main

Case No: 1:18-bk-12972-SDR—issued a check to defendant Jarrett Builders, Inc. ("Jarrett

Builders") on April 9, 2018 to pay for subcontracting work on a certain construction project.

Fewer than 90 days later, on July 6, 2018, three creditors commenced the Main Case by filing an

involuntary Chapter 7 petition against Strauss.  Strauss now seeks the return of the money that it

paid Jarrett Builders as a voidable preference under 11 U.S.C. § 547.  When Strauss filed the

original adversary complaint, it did not name Jarrett Builders; instead, it named Jarrett Fire

Protection, LLC ("Jarrett Fire Protection"), a different company that also performed work on the

same construction project and that happens to be owned by the same person who owns Jarrett

Builders.  By the time Strauss acknowledged the error and tried to start over with an amended

complaint against Jarrett Builders, more than two years had passed after the entry of the order for

relief in the Main Case.

Strauss's error prompted Jarrett Builders to file a motion to dismiss under Rule 12(b)(6)

of the Federal Rules of Civil Procedure, made applicable by Rule 7012 of the Federal Rules of

Bankruptcy Procedure.  (Doc. No. 35.)  Jarrett Builders argues that the amended complaint is

untimely, having been filed more than two years after the order for relief, and that it cannot relate

back to the original complaint because Strauss had all the information that it needed from the

beginning to sue the correct defendant.  Jarrett Builders asks the Court to infer that, with all the

necessary information available, Strauss must have chosen to sue a different company that had

nothing to do with the April 9, 2018 payment.  Jarrett Builders argues further that any money

that Strauss received to pay it would have constituted construction trust funds as a matter of state

law, meaning that the money paid through the April 9, 2018 check was not the property of the

debtor.

Strauss counters that the amended complaint does relate back to the original complaint

because all of its efforts consistently have aimed at avoiding the April 9, 2018 payment.  In that

context, according to Strauss, serving the right person at the right address but confusing

companies was only a mistake.  Strauss responds to the issue of construction trust funds by

2

noting that it has only one bank account that it uses for all expenses.  The existence of a single

bank account is significant to Strauss because it raises the likelihood of commingling funds,

which would require Jarrett Builders to proceed through discovery to trace its payment.

The Court held oral argument on June 3, 2021.  For the reasons below, the Court denies

the motion in its entirety, though the part of the motion concerning construction trust funds is

denied without prejudice to renew after discovery.

## II.    BACKGROUND[1]

### A.  *Subcontracting for the Fairfax Flats Project*

This voidable-preference case traces back to a 2017 construction project called Fairfax

Flats in Nashville, Tennessee.  Strauss was the general contractor for the Fairfax Flats project.

Among any other subcontracts that it might have entered, Strauss entered two subcontracts with

two companies owned by Jason Jarrett.  Jarrett Fire Protection—which was listed as "Jarrett Fire

Protection" in the subcontract and not by its full name, Jarrett Fire Protection, LLC—signed a

subcontract on February 24, 2017 to complete fire-protection work including installation of

automatic fire sprinkler systems.  (Doc. No. 13-1 at 6.)  Jarrett Builders—which was listed as

"Jarrett Builders" in that subcontract and not by its full name, Jarrett Builders, Inc.—signed a

subcontract on February 22, 2017 to complete all site utilities work.  (*Id.* at 21.)  Mr. Jarrett

signed both subcontracts as president of each respective company.  The Court takes judicial

notice—and the parties have not disputed in their motion papers or at oral argument—that state

business records list both subcontractors as active corporate entities.  According to state records,

---

[1] For the sake of brevity and consistent with Rule 12, the Court will refrain from repeated use of the
words "alleged" or "allegedly."  Nothing in this Background section constitutes a finding of fact unless
otherwise noted.

Jarrett Fire Protection has a principal office and mailing address at 1106 Lebanon Pike in

Nashville, and Mr. Jarrett is the registered agent at the same address.  Jarrett Builders has the

same principal office and mailing address and includes Mr. Jarrett's name in those addresses.

Lindi Holmes Jarrett is the registered agent for Jarrett Builders, also at the Lebanon Pike address.

   In accordance with the subcontracts, Strauss paid Jarrett Fire Protection and Jarrett

Builders for their work on the Fairfax Flats project.  Copies of some of the checks that Strauss

issued appear in the record.  (Doc. No. 13-1 at 17–20.)  Central to this adversary proceeding, and

the pending motion, is one check in particular:



(*Id.* at 19.)  Through this check, Strauss paid Jarrett Builders $76,465.40 on April 9, 2018.  The

check issued fewer than 90 days before the Main Case began with the involuntary Chapter 7

petition filed against Strauss on July 6, 2018.  Strauss asserts that it was significantly insolvent

when it issued the check, and its solvency has not been made an issue for purposes of the

pending motion.  At the time, Strauss's financial position was "substantially similar" to a

financial profile consisting of over $2 million in assets and nearly $11 million in liabilities.

(Doc. No. 31 at 2.)

### B.  Proceedings Under Original Complaint

As the Court mentioned above, Strauss's bankruptcy proceedings began with the filing of

an involuntary Chapter 7 petition on July 6, 2018.  (Main Case, Doc. No. 1.)  The petitioning

creditors opposed Strauss's motion to convert to Chapter 11 because the business ceased

operations and intended only to liquidate its assets.  (Doc. No. 21.)  Following a hearing, the

Court issued an order of conversion and an order for relief on August 14, 2018.  (Doc. Nos. 26,

27.)  This adversary proceeding began with the filing of the original complaint on June 23, 2020.

(Doc. No. 1.)  Strauss sought to recover the April 9, 2018 payment as a voidable preference

under 11 U.S.C. § 547.  Rather than name Jarrett Builders, however, Strauss named Jarrett Fire

Protection as the sole defendant.  The certificate of service for the original complaint shows that

Strauss served both Jarrett Fire Protection and Mr. Jarrett, as the registered agent for the

misspelled "Jerrett Fire Protection," by first-class mail at the Lebanon Pike address.  (Doc. No. 4

at 2.)  Although the Lebanon Pike address is the only address of record for both of Mr. Jarrett's

companies, and although plaintiff suggested at oral argument that the address might be a

residential address, Mr. Jarrett has denied receiving service of process of the original complaint.

(Decl. of Jason Jarrett, Doc. No. 13-1 at 5, incorporated by reference to the pending motion by

Doc. No. 35 at 2.)  Mr. Jarrett further has denied knowing anything about this adversary

proceeding until he received a copy of the default judgment that resulted when Jarrett Fire

Protection never appeared.  (*Id.*)  The Court entered the default judgment on October 13, 2020.

(Doc. No. 9.)  Following cross-motions either to correct a misnomer in the default judgment or to

set it aside entirely, based on the naming of the wrong defendant, the parties reached an

agreement to set aside the default judgment and to permit an amended complaint.  (Doc. No. 25.)

The Court endorsed the agreement by order on February 17, 2021.  (Doc. No. 26.)

5

### C.  *Proceedings Under Amended Complaint*

Strauss filed an amended complaint on March 5, 2021; it is identical to the original

complaint in all substantive respects but named Jarrett Builders as the sole defendant.  (Doc. No.

31.)  Service of the amended complaint occurred by first-class mail on registered agent "Jason

Lindi Holmes Jarrett" at the Lebanon Pike address.  (Doc. No. 34.)

Jarrett Builders filed the pending motion to dismiss on March 28, 2021.  Jarrett Builders

argues that the amended complaint is untimely because, citing 11 U.S.C. § 546(a)(1), Strauss

filed it more than two years after the entry of the order for relief.  The amended complaint cannot

relate back to the original complaint, in Jarrett Builders's view, for multiple reasons: The original

and amended complaints, on their faces, targeted two legally distinct companies; Mr. Jarrett's

denial of receipt of service of the original complaint means that the original complaint was not

served within 90 days as required by Federal Civil Rule 4(m); and Strauss did not make a

mistake in the original complaint when identifying a defendant.  To this last point, Jarrett

Builders argues that Strauss must have had a copy of the April 9, 2018 check in its possession

and that a review of the check, plus due diligence, would have identified Jarrett Builders as the

payee and proper defendant.  If, in the face of available information, Strauss sued Jarrett Fire

Protection anyway then that decision must have been intentional.  Jarrett Builders concludes that

Strauss cannot argue that it was unable to uncover the identity of the proper defendant.  Jarrett

Builders makes the additional argument that "[b]ecause Strauss as the prime contractor held the

funds in a statutory trust for the benefit of its subcontractor Jarrett Builders, Inc. pursuant to

Tenn. Code Ann. § 66-34-304, the funds were never the property of Strauss and the transfer of

those trust funds to Jarrett Builders, Inc. cannot be avoided in this preference action."  (Doc. No.

36 at 22.)

Strauss opposes the motion in all respects.  Strauss argues that the amended complaint does relate back to the original complaint because both pleadings arise from the same transaction or occurrence—the April 9, 2018 payment.  Additionally, while Strauss concedes the mistake in naming the wrong company in the original complaint, it emphasizes that Mr. Jarrett or his counsel reasonably should have understood its intentions.  Strauss asserts that it did send service of process by first-class mail and that it did so to the correct address.  Strauss concedes that the two companies technically have different registered agents but asserts, upon information and belief, that the two agents are spouses who live together at the same Lebanon Pike address that both companies use.  With respect to the issue of trust funds, Strauss argues that it used one account for all payroll and expenses, meaning that it commingled any trust funds with other funds.  Commingling of funds is important to Strauss because it would raise a factual issue about tracing funds; tracing funds, in turn, would require pretrial discovery at a minimum, even if Jarrett Builders turned out to be correct later.

## III.    DISCUSSION

### A.  *Jurisdiction and Final Judgment*

As a preliminary matter, the Court must confirm its jurisdiction over this adversary proceeding because Jarrett Builders has been silent about whether it consents to entry of final judgment.  *See* 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.").  Strauss has asserted that this adversary proceeding is a core proceeding and has consented to entry of final judgment.  (Doc. No. 31 at 1–2.)  The Court agrees that "proceedings to determine, avoid, or

7

recover preferences" appear explicitly in the statutory classification of core proceedings. 28

U.S.C. § 157(b)(2)(F).

The statutory classification of core proceedings, however, does not end the Court's

analysis. The Supreme Court in *Stern v. Marshall*, 564 U.S. 462 (2011), required bankruptcy

courts to consider "that Congress may not bypass Article III simply because a proceeding may

have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from

the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at

499. The Supreme Court in *Stern* held that a bankruptcy court could adjudicate a proof of claim

for defamation and an adversary proceeding to have the defamation claim exempted from

discharge under 11 U.S.C. § 523(a), where the claimant implicitly consented to resolution by that

court. *Id.* at 480. In contrast, the Supreme Court held, the debtor's counterclaim in the adversary

proceeding for tortious interference required adjudication by an Article III court because it was

"a state law action independent of the federal bankruptcy law and not necessarily resolvable by a

ruling on the creditor's proof of claim in bankruptcy." *Id.* at 487. The holding in *Stern* is

consistent with other cases in which courts have tried to delineate the difference between

adjudicating attempts to withdraw from a bankruptcy estate, as part of the claim-resolution

process, and attempts to add to it through independent causes of action. Bankruptcy courts have

plenary jurisdiction to order the return of voidable preferences, where a creditor filed a claim and

the trustee filed a counterclaim to avoid certain transfers as preferences; restoring the bankruptcy

estate while resolving claims is a fundamental bankruptcy function, and resolving claims is an

equitable action that does not implicate the Seventh Amendment right to a jury trial for legal

damages. *Katchen v. Landy*, 382 U.S. 323, 335–36 (1966). The presence of a claim is critical;

the power of a bankruptcy court is at its maximum during the claim-resolution process. *See Waldman v. Stone*, 698 F.3d 910, 919 (6th Cir. 2012). When a trustee commences a voidable-preference action and targets people who did not file a claim, the targets have a Seventh Amendment right to a jury trial because they did not submit themselves to the bankruptcy court's equitable power to adjudicate claims. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61–63 (1989); *accord Langenkamp v. Culp*, 498 U.S. 42, 45 (1990); *see also Waldman*, 698 F.3d at 921 (bankruptcy court may not adjudicate debtor's affirmative claims for money damages under state law). When a trustee commences a fraudulent-conveyance action in the absence of a filed claim that requires resolution, a bankruptcy court nonetheless may conduct proceedings and submit proposed findings of fact and conclusions of law to the District Court. *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 38–39 (2014). *See also, e.g., In re Hopkins*, 494 B.R. 306, 320 (Bankr. E.D. Tenn. 2013) (trustee's fraudulent-transfer proceeding against children of the debtor who did not file proofs of claim might require proposed findings of fact and conclusions of law submitted to the District Court); *In re Davis*, No. 05-15794-GWE, 2011 WL 5429095 (Bankr. W.D. Tenn. Oct. 5, 2011) (report and recommendation submitted to the District Court in a fraudulent-transfer adversary proceeding that targeting various people who did not file proofs of claim).

Here, some level of consent from Jarrett Builders would be necessary for entry of final judgment. Jarrett Builders has not filed a proof of claim in the Main Case because, ostensibly, it was fully paid for its work on the Fairfax Flats project. Similar to *Granfinanciera*, *Hopkins*, and *Davis*, this adversary proceeding is an attempt by Strauss to augment the bankruptcy estate by pursuing a claim against a non-creditor. No exercise of the fundamental bankruptcy function of

claims resolution will coincidentally resolve the avoidance action that created this adversary proceeding.  Consequently, the Court can adjudicate the pending dispositive motion and the overall case only with Jarrett Builders's consent.  *See Langenkamp*, 498 U.S. at 45 (citing *Granfinanciera*); *see also, e.g., In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 565 (9th Cir. 2012) ("Taken together, *Granfinanciera* and *Stern* settle the question of whether bankruptcy courts have the general authority to enter final judgments on fraudulent conveyance claims asserted against noncreditors to the bankruptcy estate.  They do not.").

The Court so far has concluded that it cannot enter final judgment without consent from Jarrett Builders, but one jurisdictional issue remains.  Through its conduct so far in this adversary proceeding, has Jarrett Builders consented to final judgment implicitly?  "Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express.  Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent; it states only that a bankruptcy court must obtain 'the consent'—consent *simpliciter*—'of all parties to the proceeding' before hearing and determining a non-core claim."  *Wellness Int'l*, 575 U.S. at 683–84.  "The implied consent standard articulated in [*Roell v. Withrow*, 538 U.S. 580 (2003)] supplies the appropriate rule for adjudications by bankruptcy courts under § 157.  Applied in the bankruptcy context, that standard possesses the same pragmatic virtues—increasing judicial efficiency and checking gamesmanship—that motivated our adoption of it for consent-based adjudications by magistrate judges."  *Id.* at 684 (citation omitted).  Under *Roell*, the rule for implied consent requires that "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case" before the non-Article III judge.  538 U.S. at 590.  Some kind of voluntary, affirmative conduct is critical to a finding of implied consent, to avoid a

scenario in which "a party seeks affirmative relief from the bankruptcy court believing it might

win and then cries foul over the court's entry of final judgment when it loses." *True Traditions,*

*LC v. Wu*, 552 B.R. 826, 837 (N.D. Cal. 2015) (citing *In re Bellingham Ins. Agency, Inc.*, 702

F.3d 553, 570 (9th Cir. 2012) (implied consent found where a party "fully litigated the fraudulent

conveyance action before the bankruptcy court and the district court"); *cf. United States v. B & D*

*Vending, Inc.*, 398 F.3d 728, 732 (6th Cir. 2004) (finding implied consent to a Magistrate Judge);

*Pullano v. Old Carco Liquidation Tr.*, No. 05-CV-135A, 2011 WL 4498383, at *4 (W.D.N.Y.

Sept. 27, 2011) (same).

Here, the record contains several signs that Jarrett Builders has given implicit consent to

final judgment before this Court.  Jarrett Builders has not demanded a jury trial.  Strauss put

Jarrett Builders on notice about the issue of consent through its statement of express consent in

the amended complaint.  (Doc. No. 31 at 2.)  Jarrett Builders responded to the amended

complaint with a motion to dismiss explicitly requesting that "pursuant to Fed. R. Bankr. P. 7012

and Fed. R. Civ. P. 12(b)(6), this Court dismiss this Adversarial Proceeding for failure to state a

claim."  (Doc. No. 35 at 2.)  *Cf. In re Fisher Island Invs., Inc.*, 778 F.3d 1172, 1192 (11th Cir.

2015) ("The Zeltser Group also filed a motion for partial summary judgment in its favor on the

ownership issue from the bankruptcy court but then a short time later inexplicably contested the

bankruptcy court's authority to decide it.").  This Court would have no authority to grant the

request for dismissal without consent to final judgment.  Jarrett Builders subsequently received

response papers from Strauss (Doc. No. 41) and participated in oral argument, never wavering

from its position that the Court could and should grant its motion.  *Cf. Brown v. AmSouth Bank*,

No. 15-5468, 2016 WL 4271874, at *3 (6th Cir. Mar. 23, 2016) (implied consent found where

plaintiffs voluntarily appeared before a Magistrate Judge for 16 months); *Haley v. Kundu*, No.

1:11-CV-265, 2013 WL 1896963, at *2 (E.D. Tenn. May 6, 2013) (implied consent found

through participation in the case over the course of a year).  Under these circumstances, Jarrett

Builders was, or should have been, aware of the issue of consent and chose to pursue relief that

would not be possible without that consent.  *Cf. In re Jordan*, 543 B.R. 878, 882 (Bankr. C.D. Ill.

2016) ("Here, the Court finds that both the Trustee and JPMorgan have impliedly consented to

this Court's entry of a final order.  The Trustee filed his complaint raising no questions regarding

the Court's constitutional authority to enter the final order he requested in the complaint.

Likewise, JPMorgan's motion to dismiss asks the Court to enter a final order of dismissal."); *In*

*re Carter*, 506 B.R. 83, 88 (Bankr. D. Ariz. 2014) ("Indeed, the *Stern* objection may be waived

any time the objector merely acquiesces in the Bankruptcy Court hearing any aspect of a case in

a posture that may lead to a substantive ruling.").  The Court thus finds implicit consent to final

judgment from Jarrett Builders and will proceed without having to propose findings of fact and

conclusions of law to the District Court.

### B.  Motions to Dismiss Generally

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not

akin to a probability requirement, but it asks for more than a sheer possibility that a defendant

has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement

to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations

omitted).  "We are required to construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. Nevertheless, we need not accept as true any conclusory legal allegations that do not include specific facts necessary to establish the cause of action.  The plaintiff's complaint instead must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (internal quotation marks and citations omitted).

The Court also has to review the principles governing the documents that the parties have filed so far in the record.  "In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (citations omitted).  "While documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012) (internal quotation marks and citation omitted).  Applying these principles, the Court has considered several documents in the record.  The check that Strauss issued to Jarrett Builders on April 9, 2018 is the heart of the amended complaint and the entire adversary proceeding.  (Doc. No. 13-1 at 19.)  In the absence of any challenge to the copy of the check in the record, the Court has considered that copy for the limited purpose of confirming that the payment occurred, in the amount and on the date specified on the face of the check.  *Cf. Pate v. HNB Nat. Bank*, No. 5:12CV1044, 2013 WL 1123382, at *6 n.13 (N.D. Ohio Mar. 18, 2013) (forged checks central to a conversion claim

could be considered "without converting defendants' motions to dismiss into ones for summary

judgment, as the checks were referred to in the pleadings and are integral to plaintiffs' claims

therein"); *B Squared, Inc. v. Nat'l City Bank*, No. 106CV1802, 2007 WL 1452619, at *2 (N.D.

Ohio May 14, 2007) ("Since Plaintiff refers to the check in its Complaint [for conversion], and

the check is central to Plaintiff's claims, the Court will consider the copy of the check

attached."); *see also* Fed. R. Evid. 902(9) ("Commercial paper, a signature on it, and related

documents [are self-authenticating], to the extent allowed by general commercial law.").  The

Court has considered Mr. Jarrett's prior declaration (Doc. No. 13-1 at 1–5) together with state

business records to confirm the names, principal addresses, and registered agents for both Jarrett

Fire Protection and Jarrett Builders.  The Court also has considered the two subcontracts that

Strauss entered with Mr. Jarrett's companies (*id.* at 6–13, 21–29), to show the general

background that led to the April 9, 2018 check and to confirm that Mr. Jarrett is the president of

both companies.

### C.  Relation Back Under Federal Civil Rule 15

The Court now will consider the argument from Jarrett Builders that the amended

complaint is untimely.  With exceptions that the parties have not raised here, Strauss, as a debtor-

in-possession,[2] may avoid certain transfers of its property for the benefit of creditors made within

90 days before the date of the filing of the petition and that occurred while it was insolvent.  11

U.S.C. § 547(b).  Any avoidance action by Strauss, however, must have commenced within two

years after the entry of the order for relief.  11 U.S.C. § 546(a)(1)(A).  The parties do not dispute

the chronology of four key dates:  The check in question issued on April 9, 2018; the involuntary

---

[2] *See* 11 U.S.C. § 1107(a).

14

petition was filed on July 6, 2018;[3] the original complaint was filed on June 23, 2020; and the

amended complaint was filed on March 5, 2021.  Based on the chronology of events, Strauss

faces the problem that its original complaint was timely but is now superseded; while its

amended complaint is untimely unless it relates back to the original complaint.

Whether relation back can rescue Strauss's amended complaint depends on Federal Civil

Rule 15, applicable here through Federal Bankruptcy Rule 7015:

> An amendment to a pleading relates back to the date of the original
> pleading when the amendment changes the party or the naming of the party
> against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the
> period provided by Rule 4(m) for serving the summons and complaint, the party
> to be brought in by amendment: (i) received such notice of the action that it will
> not be prejudiced in defending on the merits; and (ii) knew or should have known
> that the action would have been brought against it, but for a mistake concerning
> the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).  Reduced to their essential themes, Rule 15(c)(1)(B) focuses on *what*

is being changed, while Rule 15(c)(1)(C) focuses on *who* is being changed.  For Rule

15(c)(1)(B),

> amendments that do no more than restate the original claim with greater
> particularity or amplify the details of the transaction alleged in the preceding
> pleading fall within Rule 15(c)(1)(B).

> Amendments curing a defective statement of subject-matter jurisdiction,
> venue, or personal jurisdiction will relate back since they do not violate the
> standard prescribed by the rule.  Similarly, amendments increasing the amount
> claimed in the prayer for relief or changing a demand for equitable relief to one

---

[3] Despite subsequent conversion, the July 6, 2018 controls for purposes of Section 547(b) because "a bankruptcy case can statutorily commence only one time—upon the filing of the 'petition.'  That is, there is only one 'petition' per bankruptcy case."  *In re Carter*, 260 B.R. 130, 133 (Bankr. W.D. Tenn. 2001) (citations omitted); *see also Harris v. Viegelahn*, 575 U.S. 510, 515 (2015) ("Conversion from Chapter 13 to Chapter 7 does not commence a new bankruptcy case.  The existing case continues along another track, Chapter 7 instead of Chapter 13, without effecting a change in the date of the filing of the petition.") (internal quotation and editorial marks and citation omitted); *In re Walter*, 45 F.3d 1023, 1028 (6th Cir. 1995) ("The language of [11 U.S.C. § 348(a)] makes clear that the conversion relates back to the original date of filing the petition.") (citation omitted).

for legal relief, although actually unnecessary in light of Rule 54(c), have been
held to relate back. Rule 15(c) also permits plaintiff to reassert a claim that was
deficiently stated initially. Thus, if a motion under Rule 12(b)(6) is granted with
leave to amend, the new pleading will speak from the time of the original
complaint.

Amendments that go beyond the mere correction or factual modification
of the original pleading and significantly alter the claim or defense alleged in that
pleading are treated more cautiously by the courts in applying the relation-back
doctrine. Amendments of this type often have a substantial impact on the merits
of the case and may require the opposing party to prepare the case a second time.
As is true in a number of other contexts, such as compulsory counterclaims,
crossclaims, and certain third-party claims, the search under Rule 15(c) is for a
common core of operative facts in the two pleadings.

Arthur R. Miller et al., 6A Fed. Prac. & Proc. Civ. § 1497 (3d ed. and 2021 Supp.) (citations

omitted); *see also Maty v. Grasselli Chem. Co.*, 303 U.S. 197, 199 (1938) (relation back

permitted where amending only the corporate department where an injury occurred "did not

change plaintiff's cause of action"); *Blair v. Durham*, 134 F.2d 729, 731 (6th Cir. 1943) (relation

back permitted where a change from negligence in the use of a scaffold to negligence in its

construction "was a violation of the same obligation") (citations omitted); *Benco Plastics, Inc. v.*

*Westinghouse Elec. Corp.*, 387 F. Supp. 772, 783 (E.D. Tenn. 1974) ("It is noted that the

amended complaint essentially involved the same underlying circumstances and injury asserted

in the original complaint. Defendant Bryant had full knowledge since June of 1973 that Benco's

complaint was directed at defective lampholders and the mere amplification alone in the

amended complaint to include the old [model number] 620 lampholders provides no justification

for disallowing its relation back. Thus, the general wrong suffered and the conduct causing such

wrong are sufficiently identical.").

In contrast, Rule 15(c)(1)(C) "does not require that the new defendants received actual

notice. It is enough that the new defendants received constructive notice of the suit. Under some

16

circumstances, notice can also be imputed to a new defendant." *Berndt v. State of Tennessee*, 796 F.2d 879, 884 (6th Cir. 1986) (citations omitted). Factors affecting constructive notice include "the relationship of the new defendants to the defendant(s) originally named, whether the same attorney represented both original and new defendants, and whether the new defendants are officials of the original defendant." *Force v. City of Memphis*, 101 F.3d 702 (6th Cir. 1996) (citing *Berndt*); *cf. Smith v. TW Servs., Inc.*, 142 F.R.D. 144, 145 (M.D. Tenn. 1991) (relation back permitted where "plaintiff had numerous communications with the [new] defendant's insurance company, including letters informing them of the suit and forwarding an 'information copy' of the complaint"). With respect to mistake and Rule 15(c)(1)(C)(ii) in particular, "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint. Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity. For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010).

Here, several factors weigh in favor of allowing the amended complaint to relate back to the original complaint. Contrary to the argument from Jarrett Builders, Strauss did not change its cause of action at all from the original to the amended complaint. In both pleadings, Strauss alleged that the check that it issued on April 9, 2018 preferred the transferee over its other creditors and that the transfer needs to be avoided. When Jarrett Builders insists that the two pleadings somehow do not allege the same conduct, transaction, or occurrence, it effectively is reiterating its position that it and Jarrett Fire Protection are distinct entities and that notice to one

could not have constituted notice to the other.  To that argument, Strauss adequately has satisfied

the Court's concerns about constructive notice.  Within the time required by Rule 4(m), Strauss

sent the original complaint, by first-class mail, to the same Lebanon Pike address that 1) is the

principal address for both companies; 2) is the address for the registered agent for each company;

and 3) possibly—based on representations at oral argument that were not opposed or

contradicted—is the residence for the president of both companies and the registered agent for

Jarrett Builders.[4]  (Doc. No. 5 at 2.)  A certificate of service asserting service by first-class mail

creates a presumption of receipt that can be rebutted in other ways but not on a Rule 12 motion

to dismiss.  *See Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014) (unpublished opinion)

("While statute of limitations and exhaustion issues are susceptible to resolution on a motion to

dismiss if a plaintiff affirmatively pleads himself out of court, a plaintiff need not respond to a

motion to dismiss with affirmative matter raising a triable issue of fact on an affirmative

defense.") (citation omitted); *Ellis v. Warren*, No. 4:19-CV-67 (CDL), 2020 WL 364117, at *1

n.1 (M.D. Ga. Jan. 22, 2020) ("There is a rebuttable presumption that an item properly mailed

was received by the addressee.  Where there is a certificate of service showing that the document

was mailed to the intended recipient at his home address, it is presumed that the document was

received.  After that, the mere denial of receipt, without more, is insufficient to rebut the

presumption.") (internal quotation and editorial marks and citations omitted), *appeal dismissed*,

No. 20-10722-C, 2020 WL 5033293 (11th Cir. June 23, 2020); *Portley-El v. Milyard*, No.

---

[4] That both of Mr. Jarrett's companies are registered with the State of Tennessee distinguishes this case
from a case citied by Jarrett Builders, *3LI Consultant Grp. v. Cath. Health Partners*, No. 1:15-CV-455,
2016 WL 1572877 (S.D. Ohio Apr. 19, 2016).  In *3LI*, summary judgment was granted against plaintiff
3LI Consultant Group because it lacked standing to sue on a contract to which it was not a party.  The
party to the contract in question was "3LI, Inc.," an unregistered fictitious name.

CIV.A06CV00146PSFMJW, 2006 WL 3371642, at *1 (D. Colo. Nov. 21, 2006) (finding that first-class mail is presumed delivered if properly addressed) (citation omitted). Even with Mr. Jarrett's denial that he ever received the original complaint, when Jarrett Fire Protection moved to set aside the default judgment that had been entered, it narrowed the denial by asserting that Mr. Jarrett "did not personally receive a copy [of] the Summons addressed to Defendant 'Jerrett Fire Protection' along with a copy of the complaint in the mail. Jason Jarrett is not the registered agent for service of process for Jarrett Builders, Inc." (Doc. No. 14 at 10.) In the light most favorable to Strauss, unless Jarrett Builders has undisputed evidence that the original complaint never reached the Lebanon Pike address under any circumstances, one of the two registered agents who live or operate at that address on behalf of the two companies plausibly saw it. *Cf. Triangle Distrib., Inc. v. Shafer, Inc.*, 943 F.2d 52, 1991 WL 164333, at *2 (6th Cir. 1991) (table case) (denial of motion to amend misnomer in a default judgment reversed, where plaintiff served the sole officer of both the correct defendant and the incorrectly named defendant). That is enough to say that Jarrett Builders knew or should have known that Strauss was trying to sue the payee of the April 9, 2018 check.[5] *Cf. Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 560 (7th Cir. 2011) (real defendant knew that plaintiff meant to sue it, once its supervising employee received a complaint erroneously naming a different corporate entity with a similar name and managed out of the same office); *Fricks v. Louisville & Nashville R. Co.*, 46 F.R.D. 31, 32 (N.D. Ga. 1968) (denying relation back, where the correct railroad defendant was

---

[5] Because Strauss consistently has been trying to sue the payee of the April 9, 2018 check, and because *Krupski* issued 20 years after *King v. Nation*, 917 F.2d 1304, 1990 WL 170424 (6th Cir. 1990) (table case), the Court finds the citation by Jarrett Builders to *King* unpersuasive. Equally unpersuasive is another case cited by Jarrett Builders that relied on *King* and also predates *Krupski*. *See generally White v. Swift Transp. Corp.*, No. 3:05-CV-303, 2005 WL 3240587, at *5 (E.D. Tenn. Nov. 30, 2005).

an alias of the named railroad defendant by operation of law, "would be the world's classic
example of exalting form over substance").  Exactly when Mr. Jarrett obtained counsel remains
unclear, but the same counsel appears to represent both companies, and shared counsel is an
additional factor that supports relation back.  *See Barkins v. Int'l Inns, Inc.*, 825 F.2d 905, 907
(5th Cir. 1987).  Under these circumstances, Strauss made a mistake naming Jarrett Fire
Protection in the original complaint as the payee of the April 9, 2018 check, but its intentions
have been consistent since the start of the litigation—it wants to recover the funds transferred by
the April 9, 2018 check on account of Invoice No. 17502-03.  Jarrett Builders knew or should
have known that through Mr. Jarrett.  Accordingly, the Court denies the motion to dismiss with
respect to Federal Civil Rule 15(c) and finds that the amended complaint relates back to the
filing date of June 23, 2020.  Because Strauss filed the original complaint prior to the expiration
of two years after the involuntary Chapter 7 petition, the amended complaint is timely.

### D.  Construction Trust Funds and Tracing

Finally, the Court will examine the argument from Jarrett Builders that Strauss cannot
avoid the April 9, 2018 transfer because those funds were statutory trust funds and not property
of Strauss or of its estate.  Tennessee is one of a number of states "that treats payments received
by a contractor for the labor and materials supplied by its subcontractors or suppliers as trust
fund monies.  Contractors doing business in trust fund states are deemed fiduciaries of the
subcontractors and suppliers for whose labor and material they receive payment."  3 Bruner &
O'Connor Construction Law § 8:41 (Westlaw 2021).  Under Tennessee's construction trust fund
statute, which is part of a broader statute called the Prompt Pay Act, "[a]ny sums received by the
prime contractor as payment for work, services, equipment, and materials supplied by the remote
contractor for improvements to real property must be held by the prime contractor in trust for the

benefit and use of the remote contractor, and are subject to all legal and equitable remedies."

Tenn. Code Ann. § 66-34-304.[6]  As a matter of general principle, construction trust funds that are

classified and protected by statute are not part of a bankruptcy estate and lie outside the reach of

avoidance actions.  *See Selby v. Ford Motor Co.*, 590 F.2d 642, 647 (6th Cir. 1979) (interpreting

an analogous Michigan statute) (citations omitted); *accord In re R.W. Leet Elec., Inc.*, 372 B.R.

846, 853 (B.A.P. 6th Cir. 2007) (Parsons, *J.*) ("There is no dispute that any monies paid to the

Debtor by contracting parties would be held in trust by the Debtor and would not constitute its

property.") (citing Michigan law).  The Sixth Circuit has recognized important policy reasons for

exempting construction trust funds from a bankruptcy estate:

> The statutory builders trust is not simply special legislation that the
> building trades have lobbied through state legislatures.  Its justification is that the
> contractor, subcontractor and materialmen cannot spread their risks in the same
> way as the grocer or other merchants with many customers.  Large quantities of
> labor and materials may go into a single construction project over a long period of
> time.  A large part of a tradesman's capital may be tied up in a small number of
> construction projects.  There is a substantial risk that a general contractor who
> goes bankrupt will pull down with him some of his subcontractors and
> materialmen, as well as cause serious economic loss to the owner.

*Selby*, 590 F.2d at 647 (citation omitted).  At the same time, though, the Sixth Circuit recognized

an important limitation on the general principle: Construction trust funds are exempt from a

bankruptcy estate "so long as the funds can be traced."  *Id.* at 645 (citations omitted); *accord*

*R.W. Leet*, 372 B.R. at 853 ("However, it does not appear that the mere fact that the Debtor may

---

[6] The Court notes that Section 66-34-304 was amended in 2020 in stylistic ways that do not affect the
analysis here.  2020 Tenn. Legis. Serv. Ch. 749 § 26 (West).  For the sake of completeness, the version of
Section 66-34-304 that would have been in effect at the time of the April 9, 2018 check read as follows:
"Any sums received by the contractor as payment for work, services, equipment and materials supplied
by the subcontractor, materialman or furnisher for improvements to real property shall be held by the
contractor in trust for the benefit and use of such subcontractor, materialman or furnisher and shall be
subject to all legal and equitable remedies."  Tenn. Code Ann. § 66-34-304 (West 2019).

have received trust funds is sufficient to insulate the payments to [the subcontractor] from

avoidance.  As argued by the Trustee, it must be established that the payments actually paid to

[the subcontractor] are traceable to the trust funds received by the Debtor.") (citation omitted);

*see also In re Appalachian Oil Co., Inc.*, No. 09-50259, 2012 WL 1067699, at *7 (Bankr. E.D.

Tenn. Mar. 23, 2012) (Parsons, *J.*) (summarizing *Begier v. I.R.S.*, 496 U.S. 53 (1990), and noting

that "[o]nly if the creditor was actually paid with the trust funds has there been no transfer of

property of the debtor and therefore no preference").  Tracing is important because a party

asserting a claim to trust funds must demonstrate an interest in the account that holds those

funds.  "Without tracing, the basic rationale of restitution falls away: the claimant can no longer

point to its specific property in another's possession."  *In re Mississippi Valley Livestock, Inc.*,

745 F.3d 299, 307 (7th Cir. 2014); *see also In re Cty. of Orange*, 191 B.R. 1005, 1015–16

(Bankr. C.D. Cal. 1996) ("When a trustee debtor is insolvent and the beneficiaries cannot trace

their funds, the beneficiaries must stand in the position of general creditors.  Any other result

would destroy the level playing field for creditors established by the Code.") (citations omitted).

If the Court had to render a verdict following a trial about trust funds then the burden of proof for

tracing funds would look something like this:

> Generally, a plaintiff has the burden of proof on its affirmative claim.
> Initially, this means that the trustee must show that the transfers subject to
> avoidance were property of the debtor.  The trustee must demonstrate that the
> debtor had legal title and control over the assets.  In the case of a commingled
> account involving trust assets, the trustee carries this burden by proving that the
> debtor had legal title to the account and the account consisted of commingled trust
> and personal funds.  However, the funds in a commingled account may be used to
> pay unsecured creditors unless a trust beneficiary can trace a superior right to
> those funds.  Therefore, the funds in a commingled account that could have been
> used to pay other creditors presumptively constitute property of the estate.  This
> shifts the burden in an avoidance action involving a commingled account to the

defendant.  The defendant must then (1) show that the debtor held bare legal title
and (2) trace the equitable owner's interest to the specific property at issue.

*In re E.D.B. Constr. Corp.*, No. 11-76129-REG, 2013 WL 6183849, at \*4 (Bankr. E.D.N.Y.

Nov. 26, 2013) (internal quotation and editorial marks and citations omitted).

For Rule 12 purposes, the Court modifies the above standard to require Strauss to plead

plausibly that the April 9, 2018 check was drawn on an account that it properly owned and that

contained commingled trust and non-trust funds.  *Cf. In re Ameripay, LLC*, No. 09-27794 NLW,

2012 WL 246397, at \*5 (Bankr. D.N.J. Jan. 25, 2012) (motion to dismiss avoidance action

denied in part because "the Trustee's complaint factually identifies (a) the business relationship

between the Debtor and the Township, (b) the payroll and tax services the Debtor was supposed

to have rendered on behalf of the Township, (c) the commingling of the Township's funds with

funds of the Debtor and Debtor's affiliates as well as the funds of other Debtor clients, and (d)

alleges that the commingling caused the Township's funds to become indistinguishable from

other funds and impossible to trace").  Upon a successful pleading by Strauss, Jarrett Builders

could prevail either by limiting itself to undisputed evidence found in documents that were

integral to the amended complaint; or by seeking conversion of its motion to a motion for

summary judgment by way of Rule 12(d).

After reviewing the amended complaint and the arguments from the parties, the Court

finds that Strauss has met its limited Rule 12 burden.  Strauss pled in the amended complaint that

it issued the April 9, 2018 check to Jarrett Builders.  Buttressing the amended complaint, the

record contains a copy of the check itself, reproduced above, which names the issuing bank and

contains a checking account number[7] whose last four digits match the last four digits of one of

---

[7] Consistent with Federal Bankruptcy Rule 9037(a)(4), the Court redacted the checking account number

the checking accounts listed in Schedule A/B.  (Main Case Doc. No. 47 at 1.)  *Compare In re Appalachian Oil Co., Inc.*, No. 09-50259, 2011 WL 3742045, at *1 (Bankr. E.D. Tenn. Aug. 25, 2011) (Parsons, *J.*) (avoidance claim in complaint and amended complaint had sufficient facial plausibility where debtor pled the elements of Section 547(b) and included a copy of a check to be avoided) *with In re Caremerica, Inc.*, 409 B.R. 737, 751 (Bankr. E.D.N.C. 2009) (insufficient pleading that transfers were property of the debtor, where "there is nothing in the Amended Complaint or Exhibit B to rebut the alternative and reasonable possibility that the funds flowing through [the recipient company] originated from sources other than the debtors").  Strauss asserted in its motion papers that it has only one checking account to which it deposits all revenues and from which it pays all expenses.  (Doc. No. 41 at 5.)[8]  *Cf. First Fed. of Michigan v. Barrow*, 878 F.2d 912, 915–16 (6th Cir. 1989) (concluding that commingled funds "irretrievably lost their identity and 'tracing' became a futile pursuit as a result of which the controversial payments here in issue became avoidable transfers within the meaning of 11 U.S.C. § 547(b) and 550(a)") (citation omitted).  Strauss should have pled more explicitly that the check was drawn on an account containing commingled funds.  *Cf. In re Fin. Res. Mortg., Inc.*, 454 B.R. 6, 18 (Bankr. D.N.H. 2011) (trustee in a Section 548 action sufficiently pled that funds were property of the debtor, where complaint alleged that multiple investors' funds flowed into one account and flowed out of a separate account).  Nonetheless, and construing all facts and inferences in Strauss's favor, Strauss has pled plausibly that it issued the April 9, 2018 check from the only checking account that it uses for project-related revenues and expenses, meaning that

---

from the image of the check included in this Order.

[8] Schedule A/B lists a second checking account (Main Case Doc. No. 47 at 1), but for Rule 12 purposes, the Court construes the assertion by Strauss to mean that this second checking account is used for some purpose other than project-related revenues and expenses.

commingling would have occurred as long as the account balance in April 2018 exceeded $76,465.40.[9]  Jarrett Builders might yet prevail on the issue of construction trust funds, but it will have to trace the funds paid through the check to funds that Strauss received that would have qualified for trust protection.  That tracing will have to await pretrial discovery.

Accordingly, the Court denies the motion to dismiss with respect to construction trust funds but does so without prejudice to revisit the issue following discovery.

## IV.    CONCLUSION

Though Strauss made mistakes along the way, it has managed to put Jarrett Builders and Mr. Jarrett on notice that it considers its payment of April 9, 2018 an avoidable transfer drawn from a bank account that plausibly contained non-trust funds.  At this early stage of the litigation, Strauss has done enough to show that the amended complaint is timely and that Jarrett Builders will have to use discovery to trace its funds.  For all of the foregoing reasons, the Court will deny the pending motion to dismiss (Doc. No. 35) in its entirety, though the portion of the motion concerning construction trust funds will be denied without prejudice to renew after discovery.

A separate order will follow.

# # #

---

[9] Schedule A/B indicates that the balance for the account in question was $102,011.24 as of September 13, 2018.  (Main Case Doc. No. 47 at 1.)

25